STATE OF CONNECTICUT *v.* PETER SUMMA

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 17-5844

Argued June 26, 1967—decided February 2, 1968

*Harry F. Pergoda,* of Bristol, for the appellant (defendant).

*Leander C. Gray,* assistant chief prosecuting attorney, for the appellee (state).

DEARINGTON, J.  A first count, a charge of frequenting a gaming house (General Statutes § 53-274), was dismissed by the court.  After a trial to the jury on a second count, the defendant was found guilty of keeping a gaming house in violation of § 53-273.  On his appeal, he has assigned error (1) in the overruling of his demurrer to the first count; (2) in the denial of his motion to quash the first count; (3) in the denial of his motion for a bill of particulars requesting the state to describe which part of § 53-273 he is specifically charged with violating; (4) in the duplicity of counts; (5) in the denial of his motion for directed verdicts on both counts; (6) in the denial of a directed verdict on the second count; (7) in the dismissal of the first count; (8) in the refusal to allow the defendant to testify for a second time; (9) in the denial of the motion to set aside the verdict; (10) on the ground of the unconstitutionality of §§ 53-274 and 53-273

in that they constitute the same crime; and (11) in certain rulings on evidence.

We first consider the court's ruling on the defendant's motion for a bill of particulars. The defendant has moved to require the state to specify which of the several statutory prohibitions under § 53-273 he was accused of violating.[1] The motion was denied. An information is valid and sufficient if it charges the offense for which the accused is being prosecuted by the name by which it is known at common law or in the statutes, or by merely stating so much of the definition of the offense as will give the court and the accused notice of what offense is intended to be charged. Practice Book § 493. When an information charges the offense in any of these ways but fails to inform the accused of the particulars of the offense sufficiently to enable him to prepare his defense or fails to give him the information to which he is entitled under the constitution, the accused has a right to such a bill of particulars as may be necessary for these purposes. Practice Book § 495. In any case, the trial court may in the interest of justice order the prosecuting attorney to furnish a bill of particulars, and in making such a determination the court shall consider the whole record of the case and the entire course of the proceedings against the accused. Practice Book § 496. The information in this case was drawn in accordance with § 493 of the Practice Book and clearly informed the defendant of the "nature and cause of the accusation." Conn. Const. art. I § 8. He was specifically charged with "Keeping a Gam-

[1] "Sec. 53-273. GAMING HOUSE; KEEPERS. Any person who keeps a place resorted to for the purpose of gaming, or which is reputed to be a gaming house or place frequented for the purpose of gaming, or engages in playing at any game for any valuable thing or resides in or frequents such place for such purposes, shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

ing House, sec. 53-273." It was upon this charge that he was arraigned, tried and convicted. That the statute contained other prohibitions was of no moment, since the defendant was specifically charged with but one of the several interdicts therein set forth. The defendant was not entitled to a bill of particulars as a matter of right. *State* v. *Pallotti*, 119 Conn. 70, 72.

We next consider the defendant's demurrer to the second count and his motion to quash the first count, since a demurrer and a motion to quash amount to the same thing; Ballentine, Law Dictionary, p. 836; and both relate to the same subject matter. The defendant argues that in charging him with violations of both § 53-273 and § 53-274, there was duplicity and he was exposed to double jeopardy since each section refers to a place "frequented" for the purpose of gaming. What merit there may be in this contention, if any, was removed when the court granted the defendant's motion to dismiss the first count, hereinafter considered.

The defendant assigns error in the dismissal by the court of the first count after each side had rested, and he claims that the court erred in not granting his motion for a directed verdict on that count. Ordinarily, a court is without power to dismiss an allegation in a criminal proceedng on its own motion. 21 Am. Jur. 2d, Criminal Law, § 517. There are, however, certain instances where the court may terminate a prosecution on its own motion—for example, where it lacks jurisdiction or where a constitutional right has been ignored or invaded. Kosicki, "The Function of Nolle Prosequi and Motion to Dismiss in Connecticut," 36 Conn. B.J. 159, 168, and cases cited. A court may, however, on motion by a defendant in a criminal matter, dismiss any information if there is not sufficient evi-

dence or cause to justify the bringing or continuing of such information. General Statutes § 54-56. The record is somewhat confusing in respect to this assignment of error, for there is an indication that the court dismissed the first count on its own motion, but it is also disclosed that the defendant filed a motion of his own accord requesting the court to dismiss the first count. This motion was dated January 13, 1967 (last day of trial), and it was filed over the signature of Harry F. Pergoda, the attorney of record for the defendant. The motion appears to have been granted, for at the bottom of the sheet on which the motion is typed there appears, over what purports to be the judge's signature, the following notation: "January 13, 1967, Motion to Dismiss First Count, only, granted, *Martin.*" At the hearing before this court, the matter was brought to the attention of the defendant, and it was not denied that such a motion had been filed by the defendant and granted by the court. Since the defendant filed this motion and it was granted by the court, he cannot now claim that error was committed in denying his motion for a directed verdict on the first count, for on the granting of his motion to dismiss, this count was removed or dropped from the proceedings. Maltbie, Conn. App. Proc. § 40. It also appears of record that the defendant's motion for a directed verdict on the first count was on "January 13, 1967, Withdrawn by counsel, *Martin, J.*" Such a withdrawal is consistent with the dismissal. There is no merit in this assignment. Furthermore, the constitutional issue raised by the defendant under his tenth assignment of error is removed, since with the dismissal of the first count the claim of duplicity becomes a moot question.

Further error is claimed in the court's refusal "to allow the defendant to return to the witness stand to testify to matters set forth in his offer of

proof." The record is barren of any offer of proof on this question. If we resort to the transcript, it would appear that the attorney for the defendant requested the privilege of recalling the defendant to the witness stand after several of his witnesses had testified but before any rebuttal evidence had been offered by the state. The transcript notes that the state's objection to this procedure was sustained. Thereafter, the transcript merely notes that there was a "heavy argument." On the record, there is nothing for this court to review. Ordinarily, at this stage of the trial, the recalling of a witness would be within the court's discretion. *State* v. *Vandemark,* 77 Conn. 201, 206.

The defendant also assigns error in the denial of his motion to set the verdict aside. The grounds alleged by the defendant for setting aside the verdict are twofold: first, that it was against the evidence, and second, that it was contrary to law. The claims of law raised by the defendant under this motion have already been considered and determined adversely to him. In considering the court's ruling on the ground of insufficient evidence, but one question is presented, that is, whether the jury could find beyond a reasonable doubt that the defendant kept a gaming house. We review the evidence in the light most favorable to the verdict. *Sitnik* v. *National Propane Corporation,* 151 Conn. 62, 64.

From the evidence, the jury could reasonably find the following facts: On the early morning of November 28, 1966, the cellar section of a house located in the town of Burlington was raided by the state police. The house was not owned by the defendant, who lived in Bristol. Entrance was gained by pushing a button adjacent to the outside door. This in turn lighted a small light inside a room. The door was opened by someone inside, and the police, upon

entering, observed six or seven men sitting around a table covered with green felt. Among these men was the defendant. The police observed playing cards and money on the table, together with a cardboard box containing poker chips. The windows in the room were covered with dark cardboard material, obstructing a view of the interior from outside. It was admitted that the defendant and the others were engaged in playing poker for money. None of the players lived in the local area, although they all lived in Connecticut. During the progress of the poker games, the defendant would from time to time "cut the pot," that is, he would remove chips from the "pot" being played for, although other players also "cut the pot" on occasion. There were red chips representing fifty cents each and white chips representing twenty-five cents each on the table. These chips were handled by the defendant. Several of the players testified that the defendant was the house man, that is, the person who runs the games and rents the place. On cross-examination, the defendant admitted that he and "Danny" were the closest thing to a house man or keeper. The owner of the house, who lived upstairs, told a trooper immediately after the raid that the defendant was running the game downstairs. Most of the players had been playing poker for many years and had played poker at this location on numerous occasions. Eight of the players appeared in court as a result of this raid, pled guilty to being frequenters, and paid a fine. The defendant had a prior record for keeping a gaming house, for he admitted entering a plea of guilty to such a charge when arraigned before the Circuit Court in Bristol on January 20, 1965.

The refusal of the trial court, which saw and heard the witnesses, to disturb the verdict is entitled to weighty consideration in this court. *Sitnik* v.

*National Propane Corporation,* supra, 65. There was no error in the denial of the defendant's motion to set aside the verdict, and it follows that the court's prior ruling was correct in denying the defendant's motion for a directed verdict.

The remaining assignment of error relates to rulings on evidence. The defendant has failed to comply with §§ 1006 (4) and 989 (4) of the Practice Book, which required him, when assigning error in a ruling on evidence, to set forth the question, the objection, the answer, if any, and the exception. See Practice Book, Form 819 (C) (4), (5); *State* v. *Church,* 4 Conn. Cir. Ct. 220, 225; *State* v. *Vogel,* 4 Conn. Cir. Ct. 102, 105; *State* v. *Shlatz,* 3 Conn. Cir. Ct. 565; *State* v. *Karasinski,* 3 Conn. Cir. Ct. 342, 345. This assignment is therefore not considered.

There is no error.

In this opinion WISE and KINMONTH, Js., concurred.